May it please the court. The key to understanding the issue of standing in this case is to recognize that a fraudulent transfer suit involves two sets of conduct producing two related injuries. The first injury occurs when the debtor's conduct produces harm to the creditor. That conduct might be a tort or it might be a breach of contract or it might be any other action or inaction for which the law creates liability. It produces a quantum of injury that may or may not be reduced to a judgment but that nevertheless exists from the moment the legal injury occurs. The first injury is a concrete and particularized injury in fact that directly results from the debtor's conduct and that can be redressed through the courts. And it thus meets the Article III test for standing and indeed no one in this case contends otherwise. The second injury occurs when the transferee by accepting a transfer of the debtor's assets under circumstances that the statute deems fraudulent reduces or eliminates the creditor's opportunity to achieve satisfaction for the first injury. That injury, that second injury is likewise a concrete and particularized injury in fact because the creditor has established the first injury and has proven that the defendant's acceptance of the transfer has occurred under circumstances calculated to diminish his opportunity to collect. Now the common law and equity created only- Well now there you seem to be saying that in order for there to be the second injury the transfer has to have violated the statute. That's correct, Your Honor. Well in order for the second- Doesn't that mix the merits with the standing? Let me back up and say in order for the second injury to be legally redressable it must have violated the statute. Well I don't know if that's right either because we have cases all the time where people lose on the merits and therefore don't have any legal redress but they've had standing. Well what I'm saying is if at trial we establish the creditor's liability to us and we further establish- Then the transfers of the debtor's assets have caused an injury to us. Is that injury legally redressable? That depends on whether we have further proven the elements of the statute. Right, but you seem to be saying that there was not an injury unless the transfer was done in a manner that violated the statute. No, there was a second injury- I misspoke then, Your Honor. There was a second injury the moment the transfers were made. Whether that injury is legally redressable depends on whether we prove the elements of the statute. And why is that a new injury? That is a new injury because if the debtor had the assets that were transferred then we would have been able to obtain redress against those assets. And so it is related to the first injury. If we had no right of recovery then we would have had no injury from the transfer. But if we had a right of recovery we were further injured by the incapacitation of the debtor to respond to that first injury. All but five states have enacted the Uniform Fraudulent Transfer Act in which they have broadened the common law and equitable remedies available for fraudulent transfers. And this is a prime example of the situation spoken of in Spokane and Lujan where the legislature acts to elevate to the status of legally cognizable injuries those concrete and de facto injuries that were not addressable prior to the enactment. Congress here, the Missouri legislature, has the power to define injuries and articulate chains of causation, says Justice Scalia in the Lujan case, that will give rise to a case or controversy where none exists before. Now the appellees argue that standing requires causation and they cite this court's opinion in super value with which I know the court is familiar and the corresponding language from Lujan. But recall that the second injury is not the original injury itself but the creditor's inability to collect for that original injury. And so it is unnecessary and indeed irrelevant that the fraudulent transferees may have had no part in the creation of the original injury. And further recall that the Supreme Court held in Spokane that the risk of real harm can satisfy the requirements of concreteness. Why do you say this is a Spokane case? Well... I thought you said that there's an injury, you just said there's an injury in the transfer because it eliminates your ability to recover from the debtor. Yes, Your Honor. Wouldn't that be true whether there was a uniform fraudulent transfer act or not? It would be but we would have no right to recover unless we could meet the common law of fraudulent transfer. That goes to whether you would have a successful cause of action. That is correct, it does not go to standing. Well then why is it a Spokane case? Well, only in the sense that Spokio articulates the general Article III standards to be applied in every case. We're not saying that... You said a minute ago it's a Spokio case because there wasn't a cause of action, I mean there wasn't standing until Congress or the legislature created this remedy. What I'm saying is it is unnecessary for us to prove proximate causation, i.e. that the transfers actually in point of fact caused the debtor to be unable to pay for its original conduct. It is sufficient that the Missouri legislature has said under these circumstances there is a real risk of disabling the creditor from pursuing its remedies. Okay, so I guess you're talking about on the causation side. On the causation side and furthermore we copiously alleged proximate causation. We alleged that the transferees denuded the debtor of its assets. That allegation necessarily means that it prevented us from recovering from the debtor for that first injury. But doesn't it matter that at this point you haven't obtained liability from Navis? It absolutely does not matter. We have alleged Navis's liability in the fraudulent transfer action. But what happens if Texas decides they're not? Well, if Texas decides they're not, then we may be collaterally stopped or we may not. Probably will be. So you would lose on the merits you're saying, but you think you would still have standing. That is correct, Your Honor. We have standing. In fact, under Missouri law, we need not even sue Navis, not in Texas, not in Missouri, not anywhere. We can proceed in a fraudulent transfer suit without ever naming the debtor as a defendant in any suit. What's your authority for that? I saw that you claimed that in your reply brief. That authority is... Are you familiar with Curtis v. James from Missouri Court of Appeals? Yes, that is our primary authority on that. Curtis says there has to be a pending or threatened lawsuit, as I understood it, in order to make a claim under the statute. The actual language of the statute says whether or not the claim is reduced to judgment or not, disputed or not, liquidated or not, and so forth. This Curtis v. James, I believe, says even though you don't have to reduce it to judgment, you at least have to have a pending or threatened lawsuit against the debtor. We, in point of fact, have an actual lawsuit against him. I know, I know. I'm trying to understand the whole case. You said we don't even have to do anything with regard to the debtor, I thought was your position. We don't have to sue them, we don't have to pursue them. Well, in fact, Your Honor, there is a case, and I don't have it on the tip of my tongue, that says that where the debtor does not retain any interest in the original, in the transferred assets, that the debtor is not even a necessary party. Yeah, that's the Springfield case. That is the Stierlin v. Teschmacher. No, I thought it was Springfield General Hospital. I'm sorry, you're correct, Your Honor. All right, but that's a limited scenario. Right, but that's true in this case. In this case, the debtor retains no interest? Right. I see. Now, our standing is no less because we filed the Texas action than it would be if we had not done so. We do not need to file the Texas action. Before I sit down and wait for rebuttal, I do want to apprise the court of a recent change in circumstances. The debtor has filed for Chapter 7 bankruptcy, and the Texas litigation is under stay. And we believe these developments do not impact this court's decision because they do not bear on the question of standing. If the court concludes that we have standing and reverses and remands the case, then the district court will have to address the effect of the pending bankruptcy, determine whether the trustee intends to pursue a fraudulent transfer remedy on behalf of the estate under 11 U.S.C. 544 and 548, and if so, whether the case should be abated while that happens. But those are not matters that relate to standing. Our standing is the same regardless. Let me ask you this. You know how this statute is typically litigated, I assume. Yes, Your Honor. Are there cases where the liability of the debtor is first adjudicated in the Transfer Act case? I'm not familiar with actual trial court litigation under the Transfer Act, but it would seem logical to me in the right case to have a bifurcation of the debtor's liability and then the issue of fraudulent transfer. I don't know what you mean by it would be logical to have bifurcation. My question is, in this case, we have a separate action against the debtor, and that arguably is required under Missouri law. You say the Springfield case doesn't require that, but all that case says is they're not a necessary party if they've transferred. The Curtis case seems to say you got to have a separate action, and I think Judge Autry thought since you need a separate action, you also have to have a showing of liability, I guess, before there's an injury. What I'm asking you is whether, in your experience, there are cases where in the Transfer Act case the liability of the debtor is adjudicated in the first instance as opposed to having it adjudicated in a separate action like in your Texas case. Yes, that can certainly occur, and if it occurs, it can occur in one big trial or in two bifurcated trials where the first trial is the debtor's liability and the second trial is fraudulent transfer. All within a Transfer Act case, you mean? That is correct, Your Honor. Do you know any published authority of an example like that? I do not, Your Honor. I think I've looked at most of the fraudulent transfer act cases in Missouri and don't have one. Thank you, Mr. Young. Well, in any state would be helpful. You say there's a lot of states that have this law. I know it happens in Texas where I'm from. I don't have a citation on the tip of my tongue, Your Honor. Mr. Kasnitz? Good morning. May it please the Court, Andy Kasnitz on behalf of all of the appellees other than the Simpson Trust who filed a separate brief. As normally happens when I'm the appellee, I have an argument prepared and then questions from the panel show up that lead me in a different direction. And I think that, Judge Colleton, some of your questions really lead to essentially the bootstrapping argument that I think that the appellants are making. And what I mean by that is they're taking the fact that they can arguably, while we don't concede it, state a claim under the state fraudulent conveyance statute, that they can state a claim for that, and that necessarily means that they have standing. Now, in their brief, they pay lip service to the law, which is clear, and Spokio in other cases which says that's not enough. In fact, that's what Spokio is about, that that was the bare procedural violation of statute. But here, I think, in essence, that's what they're doing. Is they're saying, we state a claim under the Missouri fraudulent conveyance statute, and the Missouri legislature has spoken that there's a claim there, and they define what a creditor is. And because of that, necessarily, they meet the constitutional requirements of standing. And that is exactly not the law. And I think that the reason, I think, Your Honor, that Spokio is important to discuss in general, while it doesn't have specific applicability, at least factually, to this case, is that I think that Justice Alito in that case, speaking on behalf of, I think it was a 7-2 majority, along with a strong concurrence from Justice Thomas, clearly stated that or showed a path for all the federal courts that the courts are going to take a more restrictive view of standing. And even in that case, I thought that the court laid out the factors to look at, the elements. And even in that case, rather than ruling on the merits of it, sent it back to the Ninth Circuit and said, apply these standards that we've given you. And I think the clear message there is we're going to take a more restrictive view. We're going to advise all the other federal courts to take a more restrictive view. And that's what I think Judge Autry did in the court below. And that's what we would ask this court to do. Well, can you explain why Judge Autry seemed to be saying they have to have a judgment in Texas before they have standing? But if they allege the injury that they're litigating in Texas, why isn't that enough to have an injury? I think that was a reasonable reading of Judge Autry's opinion. I think he went farther than he had to go. I don't think there needs to be a merits determination, a full trial, a final appeal. What I do think there needs to be is a determination that Navis, and let's lay out how this all lays out, is in a creditor status with EFG, the appellant here. Why do you need a determination of that as opposed to an allegation of it in order to allege inadequate injury? Because you don't even get to the underlying transferee liability. It's not a presently, the language of Spokio, impending claim, the language of Lujan, an impending claim, if you have a simple allegation of that. If you allege that Navis is in creditor status and then you allege a transfer, that doesn't get you to an injury? I think there's a decent argument, and I think counsel has ably made it, that it gets you to an injury. In fact, we don't think it does. We think it falls short. It certainly does not get you to the causation element. Because the cases under the causation element, Your Honor, which is the second standing requirement laid out in Spokio, the fairly traceable requirement, that case in its progeny, and in your case in super value, this court's case, talked about the independent actions of third parties and how they would impact. And that, I think, was Judge Autry's primary focus. He said, you have this case in Texas. And I want to talk about the bankruptcy issues because I disagree with counsel on the impact of the bankruptcy issues. You have this case in Texas. A court could make one merit determination in Texas two years from now. This case could be tried a year from now in district court here, and those could be two different determinations. So what happens if that state court down in Texas says there's no creditor status two years from now? That issue's squarely before that court, fully being litigated. And in this case, the court finds a jury, returns a verdict, and judgment's entered on transferee liability, finding creditor status. What do we do with those two differences? Presumably there will be preclusion issues one way or the other, depending on which case gets decided first. I think that begs the question, Your Honor. I think if I'm a defendant in the Texas litigation, which I am not, I argue that that was not fully and fairly litigated. I was not before that court. There were no identity of parties. Yeah, okay. How do I, you know? But what's that got to do with standing? Whether there might be, you know, there might be duplicative litigation or something. I don't know. What's that got to do with standing? Well, we briefed this fairly thoroughly, Your Honor, and I think the issue is— All right, well, I can reread it. I'm sorry? I can reread the brief. Oh, no, no, and I'll speak to that, though. The issue is whether or not the actions of independent actors, and here's the key language, not before the court, could impact the decision. And interestingly, that is language that's laid out in the super value case. It's language that's laid out in other cases. We found two circuit court opinions, one out of the Fourth Circuit, one out of the Tenth Circuit, and we cited those. They are the Farrelly-Parkway decision and the Habaker decision out of the Tenth and Fourth Circuit, and those cases recognize they're not fraudulent transfer cases, but both discuss the actions of independent third parties not before the court as impacting standing through the causation element. And a couple of things are important there. First of all, those are both standing cases. They're both pre-spokio, but they're both consistent with spokio. Secondly, there are circuit court decisions which talk about the independent actions of third parties. In a moment, I'll discuss how that impacts here. The next thing I think is important is that in the briefing, appellants don't even address those issues in the reply brief. They don't discuss them at all. And those are the closest things that we believe this court has for guidance. They're not on all fours. They're not fraudulent transfer cases. But they're the closest thing that this court has, I believe, for guidance from other circuits on this issue of the impact of third parties not before the court, which is exactly what we have here. Navis is not before this court. Mr. Logan Messini and Mr. Crisco are not before this court. And that sort of begs the question a little bit about the bankruptcy, which was treated appropriately but summarily by counsel. Navis is in a Chapter 7 bankruptcy in this district, in the Eastern District of Missouri. There's been a trustee appointed. I believe that that trustee is the party who is now the holder of these fraudulent transfer claims. Now, I'm not a bankruptcy expert, but I can tell you that the trustee in the bankruptcy proceeding has taken that position. So it goes like this. EFG sues Navis, and they claim that Navis made these transfers to Mr. Logan Messini, Mr. Crisco, and even further downstream to some of my clients, the Appellees here. If these transactions are going to be unwound, which is the assertion here, and funds are going to flow back, they're going to flow back through Navis. And by flowing back through Navis, they become property of the estate, which is managed by the trustee. So I don't see how they can have standing here where the impact of that third party, Navis, the trustee in bankruptcy, rulings that Judge Renlund can make, that's who the case is before, could impact whether or not there's a creditor relationship. That's the exact kind of issue that bankruptcy courts deal with every day, whether or not there's an existence of a creditor relationship. That's going to be presumably litigated there or resolved there in some way. Mr. Logan Messini, one of the other Texas defendants and owners of Navis, is in a Chapter 11 bankruptcy. He's acting as a debtor in possession. What impact does that have? Mr. Crisco, one of the other owners, is in a Chapter 7 bankruptcy. That same trustee who's a Navis trustee is appointed for Mr. Crisco. So I would suggest to the court that those independent third parties, those actors who are outside of this courtroom and outside of the district court, necessarily impact this case and go straight to the causation issue. So I would ask this court to look at the modern jurisprudence, to follow Justice Alito and Spokio, and to make that de novo rigorous analysis in this diversity case. Why isn't your client allegedly, according to the complaint, caused the injury by participating in the transfers? Why isn't the injury traceable to your client's participation as transferees? Because the link in the chain that is missing here is whether or not Navis has creditor status. And that issue is being litigated elsewhere. And to respond in part to one question you put to counsel, does it have to go to final judgment? I think the answer is probably no. But that creditor status, that critical link of a creditor status, yes, that has to be determined. And I think that was Judge Autry's focus in the district court. He went farther and perhaps farther than he needed to. But absent that creditor status, which is being litigated elsewhere, you don't get standing here. You don't get that traceable injury here. You don't know if that link exists. And I will say, Your Honor, there was nothing precluding, and this goes to your questions to the appellant's counsel, there's nothing that precluded EFG from filing this action here and bringing all parties together. And had they done so, then I can tell you right now, as trial counsel as well as appellate counsel, I would have either sought to stay the action against my clients. I think we've still had the same standing issue, so we might move to dismiss on that basis. But certainly that would be stayed or, as I think counsel suggested, segregated, bifurcated for a separate trial. But you can do that even if they're brought in separate fora, can't you? If Judge Autry had said they were standing, you could have moved to stay this action pending the Texas case. That's correct, Your Honor. And those avenues are still available. But you still have to get past the standing threshold, which we don't think they do. And, again, I think while they tried to disguise it, the real argument here that's being made is that bootstrapping argument, that if we state a claim under the state statute, we therefore, without doing anything further, necessarily state a claim, necessarily have standing. And the cases are clear that Article III standing is distinct and unique. Could they have brought this in state court? I think they could have. Would standing be an issue? Not Article III standing. I don't know what the Missouri state law is on that. But they chose this forum, and by choosing this forum, they're required to meet the standards. A couple final matters, as I see my time is running out. As I noted, the two cases that we cited, which dealt with this third-party issue, we think are persuasive. They're not on all fours. They're not fraudulent transfer cases. But I think it's interesting not only that they weren't discussed and rebutted in any way in the briefing, but the only case that's relied on in support of their position is, and I'm sure I'm going to pronounce this incorrectly, but I think it's the Quindao case, which is a district court case out of the Northern District of California, which is a standalone case that's been cited one time, I believe, by another northern district court at the district court level. And that case is not a standing case at all. It's a ripeness case, a related concept that arises out of Article III, but it is not a standing case. It doesn't discuss the required Spokio elements. And I say Spokio elements. Spokio really confirmed existing law and further described it. But it doesn't talk at all about standing. It's clearly the analysis was simply ripeness, and that's because there are no cases out there to that effect. That case involved an alleged fraudulent transfer, and that's why it's cited, and that's the case for why I think they're trying to bootstrap sitting a claim under the statute. What's the name of the case? I'm sorry, Your Honor? What's the name of the case you're referring to? It's Quindao. Okay. It's cited in the briefs. It is cited in the briefs. Okay, that's good enough. Thank you. Thank you, Your Honor. Thank you, Mr. Kasnitz. Mr. Young? Mr. Young, excuse me. May it please the Court, two brief points. First of all, with respect to the question of whether Navis is a debtor and Enterprise is a creditor, at this stage, at the 12B1 stage, that is determined by our well-pleaded allegations, and we pled that, in fact, they were. So there's nothing that the court can point to or the counsel can point to in our allegations that negates standing. Second, with respect to the pending bankruptcy, the claim is that the trustee has a preferential right, if you will, to pursue fraudulent transfer claims so that if successful, they inure to the benefit of the estate rather than to individual creditors. That may, in all likelihood, be correct. The point is that at this point, we do not know whether the trustee will be pursuing to final conclusion any such claims or will he not. And I didn't come prepared to cite it to the court, but there's case law saying that if the trustee does not pursue the fraudulent transfer claims, then the creditors are entitled to pursue them. That is all a matter not shown of this record. That is all a matter, in our opinion, to be resolved by the district court on remand. We are not attempting to crowd in ahead of the trustee and pursue claims on behalf of a limited subset of creditors if, in fact, the trustee is going to pursue those claims, but that's a matter to be determined on remand. Finally, Judge Colleton, I would just call your attention to, in the Curtis v. James case, what the court actually did was rely on cases from other jurisdictions, this is at page 476, that a pending or threatened lawsuit is a claim. I don't think the court reached the question of whether a pending or threatened lawsuit was an essential element of a claim under Missouri Uniform Fraudulent Transfer Act. Thank you. Thank you, Mr. Young. Thank you also, Mr. Kasnetz. We appreciate your presence in the courtroom today and the argument you've provided to the court. We'll find it more or less helpful in some way as we work our way through these materials. Thank you very much, and you may be excused.